**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CLARENCE BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2635** |
| **MARLIN GUSMAN, ET AL** | **SECTION "G" (4)** |

# REPORT AND RECOMMENDATION

Before the Court is a **Motion for Summary Judgment (Rec. Doc. No. 16)** filed by the defendants, Orleans Parish Sheriff Marlin Gusman, Bonita J. Pittman, Sergeant Weaver, Sergeant West, Sergeant Gibson, Sergeant Dorsey, Sergeant Fare, Sergeant Jimison, Sergeant Steele, and Sergeant Lopez, seeking summary judgment on the grounds that the plaintiff, Clarence Brown, failed to state a claim against any defendant, the claims do not rise to the level of a constitutional violation, and the defendants are entitled to qualified immunity. On December 9, 2014, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter and the motion can be disposed of without an evidentiary hearing.

## I. Factual and Procedural Background

Brown was incarcerated in Conchetta 11 within the the Orleans Parish Prison ("OPP") system at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Sheriff Gusman, Ms. Pittman, Sergeant Weaver, Sergeant West, Sergeant Gibson, Sergeant Dorsey, Sergeant Fare, Sergeant Jimison, Sergeant Steele, and Sergeant

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 9. The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

Lopez.[3] Brown alleged that the prison facility did not provide adequate cleaning supplies. He also claimed generally the mold in the jail caused him medical problems and the living conditions were ignored by the prison officials.

In support of his claims, Brown alleges that the Conchetta 11 facility had mold, standing water from flooded toilets and sinks, vermin infestation, and dank air. He complains that inmates masturbated anytime they wanted and then prepared and served food without gloves, hair nets, or masks. Brown sought monetary compensation and unspecified declaratory relief.

## II. Defendants' Motion for Summary Judgment

### A. Defendants' Arguments

The defendants filed the instant motion seeking summary dismissal as a matter of law of Brown's claims on several grounds. The defendants argue that the claims against them in their official capacity should be dismissed for failure to identify any grounds on which to hold them liable in that capacity. They also argue that Brown has failed to allege any individual conduct that would give rise to a claim against any defendant in his or her individual capacity and the defendants can not be held vicariously liable under § 1983.

The defendants also argue in the alternative that none of the claims asserted rise to the level of a constitutional violation, and if they did, the defendants would be entitled to qualified immunity in their individual capacity. The plaintiff has not filed an oppoisition to the motion.

[3]Rec. Doc. No. 1. Brown has provided a street address indicating he has been released. Rec. Doc. No. 15.

**B. Prison Grievances/Requests for Service and Medical Records**

The defendants have attached to their motion records of the grievance complaints and requests for service submitted to officials by Brown throughout his incarceration in the OPP system.[4] As indicated by the defendants, all of the requests for service submitted by Brown in April and May of 2014 addressed Brown's desire to be assigned to kitchen duty and to remain in the OPP system to complete his sentence.[5] At that time, he was housed in the Templeman Detention Center which is not relevant to his claims here about the conditions of Conchetta 11.

Brown also filed several other requests for service in September and October of 2014 when he was housed in Conchetta 11. The requests sought only to obtain forms from the legal department and the Louisiana Department of Corrections.[6] None of these grievances or requests involve the conditions at Conchetta 11.

The defendants have also provided Brown's medical records for his incarceration in the OPP system. The Court first notes that Brown sought medical attention for cold like symptoms and headaches in April and May of 2014, at which time he was housed in the Templeman Detention Center and was not living in Conchetta 11 under the conditions alleged in this complaint.[7] For example, on April 28, 2014, he was seen for complaints of headaches, which he attributed to his

[4]Rec. Doc. No. 16-4.

[5]Rec. Doc. No. 16-4, pp. 2-6.

[6]Rec. Doc. No. 16-4, pp. 6-8.

[7]*See* Rec. Doc. No. 16-4, pp. 1-6 (showing Brown's location to be Templeman Detention Center ("TDC") from March 5 through June 19, 2014).

hypertension, and was given medication for that and for sinusitis.[8] At that time, however, he was housed in the Templeman Detention Center.[9]

On May 30, 2014, Brown was treated for complaints of cold like symptoms, which he attributed to working in the kitchen freezer.[10] At that time, he was housed in the Templeman Detention Center and not in Conchetta.

The few medical requests potentially related to the conditions of his housing in Conchetta (based on Brown's assertions) occurred in September and October of 2014. Brown was examined on September 16, 2014, by Dr. Xuaong Nguyen for complaints of pain on the left side of his chest.[11] On examination, the doctor determined that Brown had cellulitis[12] in the left armpit and down the left side of his chest. The doctor prescribed clindamycin[13] and ibuprofin and directed a follow-up visit in one week with the doctor or the nurse practitioner.

On September 21, 2014, Brown submitted a sick call request complaining that the rash under his arm was getting worse.[14] He was deferred to the scheduled follow-up appointment, which was held on October 2, 2014, when he was examined by Dr. Nguyen for continuing itchy skin in his left

---

[8]Rec. Doc. No. 16-5, p. 25, Provider Note/Orders, 4/28/14.

[9]*See* Rec. Doc. No. 16-4, p. 2 (showing Brown's location to be Templeman Detention Center ("TDC") on that date).

[10]Rec. Doc. No. 16-5, p.4, Sick Call Request, 5/26/14; p. 22, Provider Note/Orders, 5/30/14.

[11]Rec. Doc. No. 16-5, p. 18, Provider Note/Orders, 9/16/14.

[12]The spreading bacterial infection of the skin and tissues beneath the skin. http://www.medicinenet.com/.

[13]Clindamycin is an oral antibiotic used for treating serious infections. http://www.medicinenet.com/.

[14]Rec. Doc. No. 16-4, p. 6.

armpit.[15] The doctor identified the condition at that time as tinea corporis[16] or ringworm, and prescribed spectazole cream.[17] He also requested that Brown return for a follow-up visit with the doctor or nurse practitioner in one month.

On November 7, 2014, Brown submitted a sick call slip complaining that the "cyst" on his chest was getting larger.[18] His request was screened on November 11, 2014, and he was referred to the doctor sick call for the following week. At the follow-up visit on November 20, 2014, the findings from Jone Preston, ANP-BC,[19] indicated that Brown's underarm skin was clear and no further treatment was needed.[20]

## III. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49

---

[15]Rec. Doc. No. 16-5, p. 16, Provider Note/Orders, 10/3/14.

[16]Tinei corporis refers to a ringworm infection of the body, a common fungal infection of the skin (and is not due to a worm) which causes a scaly, crusted rash that may appear as round, red patches on the skin. http://www.medicinenet.com/.

[17]A brand name for econazole, an azole antifungal that works by preventing the growth of fungus and is used to treat skin infections. http://www.webmd.com/.

[18]Rec. Doc. No. 16-5, p. 3, Sick Call Request, 11/7/14.

[19]Adult Nurse Practioner, Board Certified.

[20]Rec. Doc. No. 16-5, p. 13, Provider Note/Orders, 11/20/14.

(1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id*., at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

## IV. Analysis

### A. No Official Capacity Claims Asserted

As noted by the defendants, Brown has not designated the capacity in which he has named the defendants. Some federal courts have held that a § 1983 plaintiff must designate the capacity

in which the defendant is being sued. *Hafer v. Melo*, 502 U.S. 21, 24 n.8 (1991) (citing *Wells v. Brown*, 891 F.2d 591, 592); *see also Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) (in the Sixth Circuit, if no designation is made, the defendant is deemed to be sued in the official capacity). The United States Fifth Circuit Court of Appeals has instructed that "the allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action." *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (looked to complaint to determine nature of plaintiff's claim in § 1983 case). When the complaint is not clear whether the defendant is named in his individual or official capacity, the Court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued. *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2000) (finding course of proceedings indicated that defendant was sued solely in official capacity because plaintiff never challenged assertion made by defendant in motion to dismiss that defendant was sued in official capacity); *see also, Drabek v. Larson*, 7 F.3d 229 (5th Cir. 1993).

In this case, a review of the complaint reflects that Brown has alleged broad and general complaints about the conditions of his confinement. As noted by the defendants, Brown asserted at the *Spears* Hearing only *respondeat superior* type claims against the Sheriff and the other prison officials, indicating that none of them, including the Sheriff, had any direct knowledge or involvement in his daily living conditions.

At no point has Brown indicated an intent to sue the defendants in their official capacity as representatives of Orleans Parish. *See Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000) ("suit against Sheriff Daniel in his official capacity is a suit against the Parish"); *see also, Corley v. Prator*, 290 F. App'x 749, 752 (5th Cir. Aug. 25, 2008) (suit against sheriff in his

official capacity "must be treated as suit against the municipality"); *Porche v. St. Tammany Parish Sheriff's Office*, 67 F. Supp.2d 631, 635 (E.D. La. 1999) ("La. Rev. Stat. § 33:4713 requires the parish to provide and bear the expense of offices as may be needed by the sheriffs of the district and circuit courts."); *accord*, *Victoria W. v. Larpenter*, 369 F.3d 475, 481 (5th Cir. 2004) (where sheriff's office employees sued in official capacity and the Parish were the only remaining defendants, "[t]he Parish is thus the only true defendant remaining in the suit."). He also has not mentioned or identified a particular custom or policy of the Parish being imposed at the prison or by the prison officials which would invoke a basis for liability in an official capacity. *Collins v. Doyle*, 209 F.3d 719, 2000 WL 284021, at *3 (5th Cir. Feb. 9, 2000) (Table, Text in Westlaw) (the plaintiff must show the existence of an officially adopted policy or an established custom of the local governing body that caused injury and show a causal connection between that policy or custom and the deprivation of a constitutional right) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

Brown was provided an opportunity to state his best case as allowed by *Spears*, 766 F.2d at 179. *See Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991). Without some suggestion from Brown that a policy decision by the Parish or by a sheriff's office personnel was a cause of his alleged deprivation, he has not stated a basis to hold any of the defendants liable in their official capacity. The defendants are entitled to summary judgment as a matter of law as to any claim against them in their official capacity.

**B. <u>No Basis for Liability in an Individual Capacity</u>**

As outlined by the defendants, Brown asserts several claims related to the conditions of his confinement at Conchetta 11. He alleges that the prison did not provide the right chemicals to clean

the mold on the ceilings and shower walls. He claims that the mold and "dank air" caused him nausea, vomiting, and headaches.

He also claimed that the prison officials ignored the living conditions at Conchetta. As noted by the defendants, Brown explained at the hearing that he filed a grievance complaint in November 2014 about this concern and the conditions did not change. He also testified that he named Sheriff Gusman and Major Pittman in connection with this issue because they were "in charge" although neither was personally involved in addressing his complaints. He indicated that he did not send any grievances to the other defendants, although he recalled telling these officers about his complaints. He conceded, however, that even if they knew, there was nothing any of them could have done about the conditions.

Next, Brown complained about standing water on the floors due to leaking water from the toilets and sinks. He also complained of a "vermin infestation," although he provided no further detail on this matter. Brown explained at the hearing that there was standing water in the shower area, which he believes caused him to contract a skin rash. He acknowledged that he received medical treatment and the rash was resolved with creams and antibiotics.

Finally, Brown alleged that the inmates engaged in unsanitary practices in connection with food preparation and serving practices which potentially exposed the other inmates to "food-borne diseases." Brown stated that he had been a food service inmate and was familiar with the conditions of the kitchen and food service. He stated that he no longer eats the food provided by the prison and chooses instead to buy food from the commissary. He also indicated that none of the defendants were involved in the food preparation or service.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like Sheriff Gusman and the other defendants, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also, Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable under § 1983 only if he or she were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also, Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Brown concedes that the defendants, including Sheriff Gusman, were not personally involved in (or knowledgeable of) the day to day maintenance or food service on his tier. He also has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Gusman or the ranking officers that would create a vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also, City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Brown has not alleged a personal action or connection that would render Sheriff Gusman or any of the named defendants liable under § 1983 or liable for the actions or inactions of their

subordinates at the jail. As will be further discussed, the Court has reviewed Brown's prison records submitted with the defendants' motion and finds that the Sheriff's Office personnel was not notified by Brown about the conditions addressed in this complaint.

For these reasons, Brown's claims against the defendants in their individual capacities and as supervisory officials over the prison fail to state a claim for which relief can be granted. The defendants are entitled to judgment as a matter of law.

**C. <u>Conditions of Confinement</u>**

Even if Brown had identified a proper defendant, he has not alleged or established a constitutional violation resulting from the conditions in Conchetta in order to recover under § 1983.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'"[21] *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As discussed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit*, 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be

---

[21]Brown testified that he was convicted in 2007 and sentenced to serve fifteen years in prison. With good-time credits, he expected to be released on January 6, 2015.

liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987).

Applying these factors to the instant case, and considering the competent summary judgment evidence comprised of the prison grievance and medical records summarized above, Brown has not established a constitutional violation based on the conditions in Conchetta.

**1. <u>Mold, Water, and "Dank Air"</u>**

The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as stale or "dank" air and even the presence of vermin and insects does not amount

to a constitutional violation. *See, e.g., White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). To the extent Brown asserts that these factors were present in Conchetta, he has not stated a constitutional violation.

Furthermore, even assuming that Brown's ringworm rash was contracted in or associated with the conditions at Conchetta, he has not established that any of the defendants knew of a potential risk of serious harm to his person or intentionally ignored that risk. Although he claims to have notified the officials through a grievance complaint, the records do not support this assertion. None of his grievance complaints or his sick call requests mention the conditions at Conchetta complained of here.

In fact, as resolved previously, Brown all but concedes that the named defendants either were not aware of his living conditions or could have done anything about them even if they knew. Brown does not suggest that the defendants could have known that he was exposed to a skin rash in the showers. Thus, even with the presence of mold in the showers to which he was assigned, he has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Brown also indicated that the inmates were provided with cleaning supplies, although he deemed them inadequate to clean the mold. However, "[p]risoners simply are not entitled to the

cleaning supplies of their choice." *Thomas v. Gusman*, No. 11-1424, 2012 WL 607970, at *4 (E.D. La. Jan. 27, 2012), *adopted*, 2012 WL 607698, at *1 (E.D. La. Feb. 24, 2012); *accord Tallmore v. Hebert*, No. 07-1220, 2008 WL 2597939, at *3 (W.D. La. May 28, 2008) ("There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials."); *Ellis v. Crowe*, No. 09-3061, 2010 WL 724158, at *16 (E.D. La. Feb. 19, 2010) (rejecting a prisoner's claim that the cleaning supplies provided were not "the right stuff"). In addition, while jails should be reasonably clean, the Constitution does not require that they be "completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec.23, 2009); *accord Talib*, 138 F.3d at 215 ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) ("[J]ails must provide only reasonably adequate hygiene and sanitation conditions."), citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986); *accord Benshoof v. Layton*, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004).

As a result, the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *See, e.g.*, *Eaton v. Magee*, 10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan.

19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Thus, Brown's allegations about mold, leaking fixtures and even standing water on the floor, fail to establish constitutional violations. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis*, 2010 WL 890980, at *9; *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, and considering the summary judgment evidence provided by defendants, Brown has failed to present a claim for which relief can be granted and the defendants are entitled to judgment as a matter of law.

### 2. Food Preparation and Service

In addition to the general conditions of his living area, Brown also complains about the food service practices. Although Brown speculates that the hygiene of the kitchen workers and the manner in which the food is served could spread illness, he does not allege that he (or any other inmate) has actually been made ill by the food preparation or service procedures. "[W]ithout an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension." *Gabriel v. Gusman*, No. 10-1688, 2010 WL 3169840, at *6 (E.D. La. July 16, 2010), *adopted*, 2010 WL 3175045, at *1 (E.D. La. Aug. 10, 2010); *accord Billizone v. Jefferson Parish Corr. Center*, No. 14-2594, 2015 WL 966149, at *8 (E.D. La. Mar. 4, 2015); *Hawkins v. Gusman*, No. 10-1178, 2011 WL 1527218, at *4 (E.D. La. Apr. 1, 2011), *adopted*, 2011 WL 1527021, at *1 (E.D. La. Apr. 20, 2011); *Spurlock v. Gusman*, No. 10-991, 2010 WL 2102829, at *7 (E.D. La. May 5, 2010), *adopted*, 2010 WL 2102825, at *1 (E.D. La. May 25, 2010). For this reason, he has failed to state a constitutional violation. The defendants are entitled to judgment as a matter of law on this issue.

## V. Recommendation

It is therefore **RECOMMENDED** that the defendants' **Motion for Summary Judgment (Rec. Doc. No. 16)** be **GRANTED** and the plaintiff's § 1983 claims against the defendants, each in their official and individual capacities, be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[22]

New Orleans, Louisiana, this 28th day of October, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[22] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.